TAGGED OPINION



**ORDERED in the Southern District of Florida on April 03, 2007.**

```
                              Paul G. Hyman, Chief Judge
                              United States Bankruptcy Court
```
_____

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

IN RE:

ITG VEGAS, INC., et al.

Debtors.
_____/

Case Nos.   06-16350-BKC-PGH
through     06-16357-BKC-PGH
            06-16411-PKC-PGH
            06-16412-BKC-PGH
            06-16441-BKC-PGH
(Jointly Administered under
Case No.    06-16350-BKC-PGH)
Chapter 11

### ORDER GRANTING DEBTORS' APPLICATION
### FOR AUTHORITY TO EMPLOY AND RETAIN
### THE MATHIS GROUP AS LOCAL POLITICAL CONSULTANTS

On March 30, 2007, the Court conducted a hearing on the Application for Authority to Employ and Retain The Mathis Group as Local Political Consultants (the "Application") (CP #386) filed by ITG Vegas, Inc. ("ITG-Vegas"), Cruise Holdings I, LLC ("Cruise I"), ITG-Palm Beach, Inc. ("ITG-Palm Beach"), Cruise Holdings II, LLC ("Cruise II"), Royal Star Entertainment, LLC ("Royal Star"), Riviera Beach Entertainment ("Riviera Beach"), Orion Casino Corporation ("Orion"),

1

International Thoroughbred Gaming Development Corporation ("ITGDC"), Palm Beach Maritime Corp. ("PBM"), Palm Beach Empress, Inc. ("PBE"), and International Thoroughbred Breeders, Inc. ("ITB"), (collectively, the "Debtors"), all as more fully set forth in the Application.

The Court has jurisdiction over this matter, and due notice of the Application has been provided to the Office of the United States Trustee for the Southern District of Florida, and all other parties in interest on the Master Service List, and no other or further notice need be provided.

On March 7, 2007 Debtors filed the Application, seeking authority to employ The Mathis Group pursuant to 11 U.S.C. § 327(a).  On March 28, 2007 Westminster Investments, LLC, *et. al.* (the "Westminster Group") filed the Objection to the Applications (the "Objection"), arguing that The Mathis Group was not disinterested as required by section 327(a), as it is a creditor of the estate.  On March 29, 2007 the Debtors filed the Response of the Debtors to the Objection (the "Response"), modifying their basis for relief to reflect approval pursuant to 11 U.S.C. § 363(b) as a use of cash.

At the hearing on March 30, 2007 Debtors supported their argument for retention pursuant to section 363(b) by citing to *In re Johns-Manville*, 66 B.R. 612 (Bankr. S.D.N.Y. 1986), which held that only persons in occupations which play a central role in the bankruptcy proceeding are professionals pursuant to 11 U.S.C. § 327(a).  Under the facts of *Johns-Manville*, this definition did not include non-attorney lobbyists.  *Id*. The Westminster Group asserted that the Court should find that The Mathis Group falls under the ambit of section 327(a), relying on a separate formulation for the definition of "professional person" discussed in *American Tissue*:

> In making the determination of whether an entity or person is a

2

> "professional," courts have stated that the following factors should be considered: 1) whether the employee controls, manages, administers, invests, purchases, or sells assets that are significant to the debtor's reorganization, 2) whether the employee is involved in negotiating the terms of a Plan of Reorganization; 3) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; 4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate; 5) the extent of the employee's involvement in the administration of the debtor's estate; and 6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term.

*In re American Tissue, Inc.*, 331 B.R. 169, 173 (Bankr. D. Del. 2005) (*quoting In re First Merchants Acceptance Corp.*, 1997 WL 873551, at *2 (Bankr. D. Del. 1997)). The Westminster Group contends that the *American Tissue* formulation adopts a standard that repudiates the conclusion reached by *Johns-Manville* as to non-attorney lobbyists, and that the Court should find The Mathis Group to be a professional subject to the disinterestedness requirement of 11 U.S.C. § 327(a).

The Court finds that The Mathis Group falls outside the definition of "professional persons" under both *Johns-Manville* and *American Tissue*. The six-factor test discussed in *American Tissue* is designed to harmonize the *Johns-Manville* cases, which limit the definition of professionals to those occupations that play a central part in the reorganization, with those cases that define a professional as an employee that is given discretion or autonomy in some part of the debtor's estate. *See First Merchant Acceptance Corp.*, 1997 WL 873551 at *2. "While the [*Johns-Manville*] test focuses on the significance of the individual's role to the debtor proceeding and the [discretionary test] focuses on the amount of discretion the individual has in

accomplishing that role, the bottom line of both tests involves an examination of the types of duties to be undertaken by the individual." *Id.* The *American Tissue* standard does not reject the *Johns-Manville* analysis, but rather supplements it with other factors, several of which involve an examination of whether the types of duties undertaken by the individual involve the administration of the debtor's estate.

     A review of the *American Tissue* factors leads the Court to conclude that only factor (6), whether the employee can be considered a "professional" within the ordinary meaning of the term, weighs in favor of a finding that The Mathis Group is a professional pursuant to 11 U.S.C. § 327. As in *Johns-Manville*, the services The Mathis Group is to perform are the same that it performed in the ordinary course of business prepetition. Additional facts important to the *Johns-Manville* decision are also present here. The *Johns-Manville* court noted that the lobbyists retained by the debtor did not play a part in negotiating the plan, adjusting debtor/creditor relationships, disposing or acquiring assets, or performing other duties of a debtor under the Bankruptcy Code. *Johns-Manville*, 60 B.R. at 621. Not only do these facts persuade the Court to find that The Mathis Group falls outside the scope of "professional person" under the *Johns-Manville* standard, they are also highly persuasive as to factors (2), (4) and (5) of the *American Tissue* test, all of which are conditioned on a relationship between the employee and the administration of the bankruptcy estate. The Court, weighing the factors of *American Tissue* against one another and considering them in totality, finds that The Mathis Group is not a "professional person" under 11 U.S.C. § 327(a) and may therefore be retained pursuant to 11 U.S.C. §363(b)

The Court, having considered the Application and the Affidavit of Donald B. Mathis submitted in support of the Application and the representations contained therein that The Mathis Group and Donald B. Mathis do not hold any interest adverse to the Debtors or their bankruptcy estates on the matters in which they are engaged, except as otherwise described in the Affidavit, the Objection, the Response, the argument of counsel at the hearing, and being otherwise fully advised in the premises, hereby:

**ORDERS AND ADJUDGES** that:

1. The Debtors are authorized to employ The Mathis Group as local political consultants to the Debtors, pursuant to 11 U.S.C. § 363(b) to provide local political consulting and lobbying services for the Debtors as more fully described in the Engagement Letter dated February 8, 2007, which is attached as Exhibit "A" to the Application.

2. The Mathis Group shall be paid a consulting fee of $2,500 per month and will be reimbursed for all reasonable out-of-pocket expenses. Any extraordinary assignments will be compensated as set forth in the Engagement Letter, subject to application and approval by the Court. The Mathis Group shall provide on a monthly basis sufficient documentation (or invoices) setting forth the reasonable services performed, and reasonable out-of-pocket expenses incurred, by The Mathis Group during the preceding month to the following parties: (i) Debtors' counsel; (ii) counsel to PDS-A and PDS-B (as defined below); (iii) counsel to the Official Unsecured Creditors' Committee; and (iv) the Attorney-Advisor to the United States Trustee. Notwithstanding anything to the contrary, parties in interest shall not be precluded from objecting to such fees or expenses to the extent that The Mathis Group has not performed such services for which it has been engaged or such out-of-pocket expenses are unreasonable.

3. With respect to the any funds expended by the Debtors pursuant to the terms hereof, PDS-A[1] and PDS-B shall be entitled to all of their rights, liens, protections, and priorities as set forth in the Fifth Interim Cash Collateral Order (and any subsequent orders entered by this Court with respect to the use of the Alleged Cash Collateral, collectively, the "Cash Collateral Orders").

4. Nothing herein shall constitute a consent by PDS-A or PDS-B to the Debtors' use of the Alleged Cash Collateral (or any surcharge against the PDS Collateral) to pay the fees or expenses of The Mathis Group except as may be specifically provided: (i) as a line-item budget disbursement in an approved budget attached to the Cash Collateral Orders' (ii) a subsequent order of this Court; or (iii) a written consent by PDS-A and PDS-B to funding such fees and expenses from their Alleged Cash Collateral.

###

**COPIES FURNISHED TO:**

David L. Rosendorf, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce De Leon, 9th Floor
Coral Gables, Florida 33134

[Attorney Rosendorf is directed to serve copies of this order on all interested parties and to file a certificate of service]

---

[1] PDS Gaming Corporation, through its attorney-in-fact PDS Funding 2004-A, LLC ("PDS-A"), maintains that it has a first-priority perfected security interest and lien upon all of the PDS Collateral, securing the repayment to PDS-A of the "Tranche A Debt" owed by the Debtors in the approximate amount of $42.2 million. Further, PDS maintains that the Debtors owe additional sums to PDS ("PDS-B") with respect to "Tranche B Debt" owed by the Debtors in the approximate amount of $4.89 million, secured by second-priority perfected liens and security interests on the PDS Collateral, except for a certain RSE Lease.